IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03371-RMR-NRN

TEDDY T. PITTMAN,

Plaintiff,

v.

TIM KING, in his individual and official capacities;
GRETA SALAZAR, in her individual and official capacities;
SCOTT BAKER, in his individual and official capacities;
CITY OF AURORA, a municipality;
LIEUTENANT BELL, in his individual capacity;
G. MAHR, JR., in his individual capacity,

Defendants.

---

### ORDER GRANTING
### PLAINTIFF'S FIRST MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD A PARTY AND CONFORM TO FACTS (Dkt. #128)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court pursuant to an Order (Dkt. #129) issued by Judge Regina M. Rodriguez referring Plaintiff Teddy T. Pittman's First Motion for Leave to Amend Complaint to Add a Party and Conform to Facts ("Motion to Amend") (Dkt. #128). Defendants Tim King, Greta Salazar, Scott Baker (the "Individual Aurora Defendants"), and the City of Aurora ("Aurora") (collectively, the "Aurora Defendants"), and Joel Bell and Glenn Mahr, Jr. (collectively, the "Denver Defendants") filed a joint response (Dkt. #130), and Plaintiff filed a reply (Dkt. #132). The Court heard argument from the parties on May 31, 2023 (Dkt. #137).

Now, having taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and as set forth fully below, it is hereby **ORDERED** that the subject Motion to Amend (Dkt. #128) is **GRANTED**.

## BACKGROUND

The procedural history and factual background of this civil rights lawsuit were set forth in the undersigned's June 17, 2021 Report and Recommendation (Dkt. #52) and Judge Rodriguez's January 6, 2022 Order (Dkt. #68), and will only be repeated as necessary here. Briefly, Plaintiff alleges that on April 24, 2020, Defendants pulled him over with their guns drawn, ordered him to lay flat on the ground and crawl towards them, and left him handcuffed for approximately an hour while they performed several searches of Plaintiff and his vehicle without his consent. Plaintiff had no outstanding warrants, and the citations he received during that traffic stop for an illegal turn and driving under suspension were later dismissed. Plaintiff asserts Fourth Amendment claims for unreasonable searches and seizures, wrongful detention, and excessive force against the Individual Aurora Defendants, a Fourteenth Amendment equal protection claim against the Individual Aurora Defendants, and a municipal liability claim against the City of Aurora.

A Scheduling Order (Dkt. #85) was entered on March 31, 2022. Plaintiff, who initially proceeded pro se, was appointed counsel and his current counsel entered their appearances (*see* Dkt. ##100–02) that October. On April 18, 2023, Plaintiff filed the subject motion. He seeks to add as a Defendant Colorado Department of Corrections ("CDOC") Officer Dean Warren, a fugitive apprehension unit investigator who was at the

scene of the traffic stop, and revive the previously-dismissed Fourteenth Amendment Equal Protection claim against the Denver Defendants.

According to the proposed First Amended Civil Rights Complaint (*see* Dkt. ##128-1 (clean copy) & 128-2 (redlined copy)), Officer Warren was looking for an African American male named Brandon Holland. Officer Warren had "ping" on Holland's phone and was receiving real-time location data. Officer Warren, assisted by Defendants Bell and Mahr, surveilled the intersection of Colfax Avenue and Uinta Street for several hours. They observed Plaintiff drive to a nearby motel and followed him there even though Plaintiff did not match Holland's description (other than being an African American man), and without running Plaintiff's license plate through dispatch. Joined by the Individual Aurora Defendants, they followed Plaintiff for several miles after he left the motel before requesting that King, Salazar and Baker initiate a felony stop. Even though it should have been obvious that they had not pulled over Holland, Defendants handcuffed Plaintiff and detained him at gunpoint. Plaintiff also alleges that Officer Warren destroyed emails relating to the "pings" and wore misleading body armor wrongfully indicating he was a U.S. Marshal.

Defendants do not oppose the proposed amendment concerning the addition of Officer Warren, but otherwise oppose the motion under Rule 8(a)(2) of the Federal Rules of Civil Procedure and because it would subject them to undue prejudice. Defendants also object to the revival of the Fourteenth Amendment equal protection claim against the Denver Defendants that was previously dismissed.

## LEGAL STANDARDS

The deadline to amend pleadings was May 16, 2022. (*See* Dkt. #85 at 9.) Thus, allowing Plaintiff to amend his pleading would mean modifying the Scheduling Order, which requires good cause. Fed. R. Civ. P. 16(b)(4) (A scheduling order "may be modified only for good cause and with the judge's consent.") "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order. *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

If good cause to amend the Scheduling Order exists, the Court then turns to Rule 15(a)(2) which states, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend shall be freely granted when justice so requires. *See, e.g.*, *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the

court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

## ANALYSIS

**Good Cause to Amend the Scheduling Order**

As an initial matter, the Court finds that Plaintiff has demonstrated good cause to amend the Scheduling Order. The Scheduling Order setting the amendment deadline was entered when Plaintiff still proceeded pro se, and that deadline had already passed when current counsel entered their appearances. Moreover, although Officer Warren's deposition was originally noticed for November 2022, when Plaintiff changed attorneys, it had to be rescheduled for January 9, 2023. This motion was filed a little over three months after the deposition. The Court credits Plaintiff's counsel's explanation that some of this delay is attributable to him contracting numerous illnesses and recovering from COVID-19. Moreover, given the number of factual allegations that have been added to the proposed amended pleading, the Court is satisfied that any delay is not due to lack of diligence on Plaintiff's part. In all, the Court finds that Plaintiff has acted in good faith in filing the subject motion and he has a reasonable justification for missing the initial deadline.

**Amendment Under Rule 15(a)(2)**

The Court will next address the merits of the Motion to Amend.

First, the Court notes that Defendants do not object to Officer Warren being named as a Defendant. Accordingly, the motion is granted in this respect.

Next, Defendants claim that Plaintiff's proposed amendments are subject to dismissal under Rule 8(a)(2), which requires every pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The primary purpose of the [Rule 8] provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994). Rule 8(a) serves "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has legal right to relief." *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).

Defendants protest that Plaintiff has added 100 paragraphs of new allegations, and the proposed pleading totals 517 paragraphs over 65 pages. But "verbosity or length is not by itself a basis for dismissing a complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008)). And the proper length of a pleading "cannot be defined with any great precision." *Id.* at 1059 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010)).

6

Rather, a complaint violates Rule 8 when it is "virtually impossible to understand" or "completely lacking in clarity and intelligibility." *See Mitchell v. City of Colo. Springs, Colo.*, 194 F. App'x 497, 498 (10th Cir. 2006). The Court has reviewed the proposed First Amended Civil Rights Complaint and although it is long, it is organized, intelligible, and gives Defendants fair notice of Plaintiff's claims.

Next, Defendants argue that they will suffer undue prejudice if amendment is allowed. The Court recognizes that this case is almost three years old. However, the stay of discovery that was entered when Defendants' motions to dismiss were pending was only lifted in January 2022, and Plaintiff did not have counsel until June 2022. Moreover, the Scheduling Order has been modified no less than five times at the parties' request, and discovery does not close until January 15, 2024. Thus, the Court finds that Plaintiff's interest in fully litigating his claims outweighs any prejudice suffered by Defendants.

Finally, Defendants object to allowing Plaintiff to revive his Fourteenth Amendment equal protection claim against the Denver Defendants. Again, the Court disagrees.

In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court held that claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause. 517 U.S. at 813. The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To adequately plead an equal protection claim, Mr. Pittman must allege facts showing that Defendants treated him differently from others similarly situated. *Id.* "Individuals are

7

'similarly situated' only if they are alike 'in all relevant respects.'" *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *Coal. For Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)). To state a claim of racially selective law enforcement, Mr. Pittman also must demonstrate that Defendants' actions had a "discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id.* "[T]here need not be direct evidence of discriminatory purpose; discriminatory purpose can be shown with purely circumstantial evidence." *Blackwell v. Strain*, 496 F. App'x 836, 844 (10th Cir. 2012).

In its adopted Report and Recommendation, the Court determined that Plaintiff had stated an equal protection claim against the Individual Aurora Defendants (*see* Dkt. #52 at 9–11), reasoning that Plaintiff had adequately alleged that the decision to pull him over was pretextual; that the decision to handcuff, search, and detain him at gunpoint was based on Plaintiff's race; and that demographic data showed that the Aurora Police Department disproportionately targets African Americans and subjects them to excessive force.

As to the Denver Defendants, on the other hand, the Court found that Plaintiff had not alleged a discriminatory purpose or effect. The Court noted (*see id.* at 22–23) that Plaintiff did not allege that Defendant Bell knew Plaintiff's race before the stop and Defendant Mahr, who did know Plaintiff was African American, was not the one who made the decision to pull him over. The Court also observed that Plaintiff did not cite

statistical evidence or other instances demonstrating the Denver Police Department treated Black citizens differently than white ones.

The amended pleading does not offer additional statistical evidence or identify similarly situated individuals whom the Denver Police Department treated in a comparably unconstitutional manner. However, it does allege that the Denver Defendants were given a poster with Holland's picture on it and that, other than being a Black male, Plaintiff bore no resemblance to the wanted individual. Nonetheless, they targeted Plaintiff's vehicle based only on his race, after he had the bad luck of driving through an intersection that was under surveillance. Defendant Bell observed Plaintiff through binoculars and should have seen he did not match Holland's description. Defendant Mahr likewise observed Plaintiff go into and then leave a motel. During the 30-minute period Plaintiff was in the motel, either Defendant could have run a check on Plaintiff's vehicle to determine who owned (or, in this case, rented) it, but neither did. Instead, Officer Warren and the Denver Defendants proceeded to follow Plaintiff, and Plaintiff alleges that the three officers ordered the Individual Aurora Defendants to conduct a felony stop on the vehicle. A felony stop involves law enforcement officers drawing their firearms. Plaintiff alleges that Officer Warren and the Denver Defendants placed him in this dangerous situation even though they were either unsure—or, even worse, knew—that he was not the man they wanted. The Court concludes that Plaintiff plausibly alleges that this would not have happened to a non-African American driver and that the Denver Defendants' actions were, at least in part, motivated by a discriminatory purpose.

## ORDER

Accordingly, it is **ORDERED** that Plaintiff's First Motion for Leave to Amend Complaint to Add a Party and Conform to Facts (Dkt. #128) is **GRANTED**. The Clerk is directed to place Plaintiff's First Amended Civil Rights Complaint (Dkt. #128-1) on the docket as the operative pleading. Defendants shall respond in accordance with Fed. R. Civ. P. 15(a)(3).

**It is SO ORDERED.**

Dated: October 3, 2023                                          BY THE COURT:

_____